Adams v. DeWitt Special School District No. 1.

4-8879                                    218 S. W. 2d 359

Opinion delivered March 7, 1949.

Rehearing denied April 4, 1949.

*J. M. Henderson, Jr.,* for appellant.

*George E. Pike, Townsend & Townsend* and *Rose, Dobyns, Meek & House,* for appellee.

GRIFFIN SMITH, Chief Justice. At a special election held November 20, 1948, DeWitt Special School District No. 1 of Arkansas and Jefferson Counties voted a continuing three-mill tax to retire a $50,000 bond issue for building purposes. In March of the same year bonds had been sold pursuant to a building expansion program, but the amount proved insufficient; hence this supplemental proposal.

No irregularities in proceedings are alleged. Appellant concedes that if Act No. 28 of 1933 is still in effect his suit must fail.[1] It is insisted, however, that Amendment No. 40 to the Constitution, adopted November 2, 1948, supersedes Act 28, and that the Amendment does not permit a special election or a continuing tax

---

[1] Act 28 of the Extraordinary Session of 1933, approved Sept. 2, amends § 65 of Act 169 of 1931. Pope's Digest, § 11498.

levy for building purposes. The Amendment is copied in the margin.[2]

After directing the General Assembly to provide for support of the common schools, the Amendment authorizes Districts to levy an annual tax (a) for the maintenance of schools, (b) for the erection and equipment of buildings, and (c) for the retirement of existing indebtedness. To effectuate these purposes, the Board of Directors, acting not less than sixty days in advance of the annual school election, shall make public a budget it has prepared and approved. With this budget the Board recommends an adequate tax levy. In addition, the suggested levy must "include the rate under any continuing levy for the retirement of indebtedness." The proposed rate becomes fixed if a majority of the qualified electors participating in the election favor the budget. If disapproved, the rate adopted at the preceding annual election continues.

There is no mention of a special election; nor is there direct or inferential recognition of Act 28. The Amendment is comprehensive in that it removes all prior financial restrictions upon the electorate. Buildings, equipment, existing indebtedness, maintenance, all may be cared for in the Board's recommendations, and finality needs only the approval of a majority of those

[2] Amendment No. 40. "The General Assembly shall provide for the support of common schools by general laws, including an annual per capita tax of one dollar, to be assessed on every male inhabitant of this state over the age of twenty-one years; and school districts are hereby authorized to levy by a vote of the qualified electors respectively thereof an annual tax for the maintenance of schools, the erection and equipment of school buildings and the retirement of existing indebtedness, the amount of such tax to be determined in the following manner: The Board of Directors of each school district shall prepare, approve and make public not less than sixty days in advance of the annual school election a proposed budget of expenditures deemed necessary to provide for the foregoing purposes, together with a rate of tax levy sufficient to provide the funds therefor, including the rate under any continuing levy for the retirement of indebtedness. If a majority of the qualified voters in said school district voting in the annual school election shall approve the rate of tax so proposed by the Board of Directors, then the tax at the rate so approved shall be collected as provided by law. In the event a majority of said qualified electors voting in said annual school election shall disapprove the proposed rate of tax, then the tax shall be collected at the rate approved in the last preceding annual school election. Provided, that no such tax shall be appropriated for any other purpose nor to any other district than that for which it is levied."

voting. The entire plan revolves around the annual election, mentioned four times. It is highly improbable that those who wrote the Amendment intended that it would be complementary to Act 28, and then failed to express that purpose. We conclude that the omission of such a reference was not inadvertent.

It does not follow, however, that a continuing levy cannot be made. As has been mentioned, the Amendment directs that "the rate under any continuing levy for the retirement of indebtedness" shall be included in the budget. We know, historically and from our own cases, that permanent school facilities have been provided through bonds secured by continuing levies; and the indebtedness mentioned in the Amendment is largely of this character.

It follows that while special elections are not authorized, continuing levies for buildings and equipment are within purview of the Amendment. Reversed.

Mr. Justice GEORGE ROSE SMITH did not participate in the consideration or determination of this case. Mr. Justice McFADDIN dissents from that part of the decision holding that bonds may not be voted at a special election.

ED. F. McFADDIN, Justice (dissenting). The only portion of the decree of the Chancery Court being reversed by the majority opinion is that portion which allows bonds to be voted at a *special* election. I submit that the decree should be affirmed in its entirety, because I believe the *special* election feature of Act No. 28 of 1933 was not varied by Constitutional Amendment No. 40. Here are my reasons for such conclusion.

Amendment No. 40 allows school districts at each annual election to vote a tax "for the retirement of existing indebtedness." The amendment also says that the school board shall submit a proposed budget which must include "the rate under any continuing levy for the retirement of indebtedness." So the amendment No. 40 recognizes that there may be a continuing levy for the retirement of indebtedness. The said amendment No. 40 omits any procedure for voting such continuing

levy even though it recognizes it. Such omission was evidently because Act No. 28 of 1933 provided the necessary procedure for voting a continuing levy. Unless we allow Act No. 28 of 1933 to stand, then Amendment 40 has language in it—that is regarding "continuing levy"—that is meaningless. So, I submit that Amendment No. 40 was worded in the light of the continuing existence of the said Act No. 28. Said Act No. 28 allows the voting of the continuing levy at a *special* election, and that right should be recognized and allowed in the present case. The majority is giving a restricted effect to Act No. 28 by striking down the provision for a special election. Therein I think is error.

Let us take this case to illustrate the hardship that will be worked by the majority opinion: Suppose in any school district in Arkansas the school building should be destroyed by fire or tornado the day after the annual school election. Under the majority opinion, the District would have to wait until the next annual school election before bonds could be voted to build a new building. I cannot believe that the people of Arkansas intended to restrict the powers of the school districts in such an extremity. The Amendment No. 40 shows on its face that it was its purpose to enlarge the powers of the school districts rather than to restrict such powers.

I emphasize that there is nothing in Amendment No. 40 which *prohibits* the voting of the continuing levy at a *special* election. In the absence of such prohibition, I submit that the Amendment No. 40 should not be strictly construed—as the majority is doing—so as to restrict a power previously possessed by school districts —*i. e.,* special elections—when the entire Amendment No. 40 shows that its purpose was to enlarge the power of school districts.

Therefore I most respectfully dissent.