The Honorable Ted E. Mullenix State Representative 140 Riverside Drive Hot Springs, Arkansas 71913
Dear Representative Mullenix:
This is in response to your request for an opinion on several questions relating to property taxes imposed by school districts. You have included with your request a letter from an officer of a citizens' group that states that a specified district's rate of tax includes 10.2 mills for the retirement of existing indebtedness but that, owing to refinancings and increases in property valuations, it is estimated (by the citizens' group) that a rate of less than four mills would produce enough revenue to retire the district's outstanding debt. The correspondence makes note of A.C.A. § 6-20-1210(a) (Repl. 1993),[1] which provides:
 No part of any building fund shall be used for any other purpose in any year than to pay the bonds and interest thereon maturing that year and any that may be past due, until the maturities are paid in full or until the funds are set aside to pay the full amount of the bonds; provided, the surplus in any year over and above the amount necessary to pay bonds and interest maturing that year, whether hereafter or heretofore issued, may be used by the respective school districts for any other school purpose.
The questions set forth in the letter are:
 1. Is there superseding Arkansas law that prohibits school districts from moving surplus revenues from Building Funds to Maintenance and Operations?
 2. Since 10.2 mills for constructions were approved by district voters in the past but less than 4 mills are now required to meet outstanding obligations, can a vote of district patrons reduce their bonded debt millage?
 (a) Is the school election held in September of each year the appropriate election for balloting on this issue?
 (b) What is the process for taxpayers to put this issue to a vote of the patrons? Can this same process be used by voters to place other issues such as a referendum on the school board's policies before the voters?
 (c) Assuming a favorable vote, will this be binding on the district administration?
In my opinion, the answer to the first question is "no." Our constitution provides:
 [S]chool districts are hereby authorized to levy by a vote of the qualified electors respectively thereof an annual tax for the maintenance of schools, the erection and equipment of school buildings and the retirement of existing indebtedness, the amount of such tax to be determined in the following manner:
 The Board of Directors of each school district shall prepare, approve and make public not less than sixty (60) days in advance of the annual school election a proposed budget of expenditures deemed necessary to provide for the foregoing purposes, together with a rate of tax levy sufficient to provide the funds therefor, including the rate under any continuing levy for the retirement of indebtedness. If a majority of the qualified voters in said school district voting in the annual school election shall approve the rate of tax so proposed by the Board of Directors, then the tax at the rate so approved shall be collected as provided by law. In the event a majority of said qualified electors voting in said annual school election shall disapprove the proposed rate of tax, then the tax shall be collected at the rate approved in the last preceding annual school election.
 Provided, that no such tax shall be appropriated for any other purpose nor to any other district than that for which it is levied.
Ark. Const. art. 14, § 3.
In Lewelling v. Mansfield School Dist., 240 Ark. 237, 238, 398 S.W.2d 665
(1966), the court held constitutionally valid a ballot that provided that "[s]urplus revenue from all building fund millage may be used for other school purposes." The court held that the last paragraph of Ark. Const. art. 14, § 3, requires only that school tax revenues be expended "for school purposes" and that the language of the ballot did not violate the constitution. Id. at 241. It is clear, therefore, that the statutes expressly permitting a school district to apply to other school purposes those funds arising from the portion of the millage designated as being for the retirement of indebtedness (i.e., A.C.A. §§ 6-20-1210(a) and26-80-106)[2] are valid.
With regard to the second question, it is my opinion that, while it may be possible in theory to reduce the portion of the district's tax rate designated as being for the retirement of indebtedness, it almost certainly is impossible in practice. As quoted above, Ark. Const. art.14, § 3, now expressly contemplates that a specified portion of a school district's tax may be a "continuing levy for the retirement of indebtedness" and such levies are not unconstitutional. Adams v. DeWittSpecial School Dist. No. 1, 214 Ark. 771, 218 S.W.2d 359 (1949). Even before the constitution was amended in 1948 to include express reference to continuing levies, the Supreme Court of Arkansas had repeatedly upheld the validity of levies for debt service that would be imposed for as long as the debt supported thereby remained outstanding. Cohn v. Dixon,212 Ark. 392, 205 S.W.2d 845 (1947); Ruff v. Womack, 174 Ark. 971,298 S.W. 222 (1927); Woodruff v. Rural Special School Dist. No. 74,170 Ark. 383, 279 S.W. 1037 (1926).See also Lewelling, 240 Ark. 237; Lakeside SchoolDist. of Chicot County, 202 Ark. 778, 153 S.W.2d 149 (1941); Oak GroveConsol. School Dist. No. 9 v. Fitzgerald, 198 Ark. 509, 129 S.W.2d 223
(1939); Parsons v. Barnett, 189 Ark. 1057, 76 S.W.2d 83 (1934).
It is my understanding that school district bonds simply are not, in practice, issued without being supported by a continuing tax levy. It is, accordingly, virtually certain that the outstanding debt of the district at issue is supported by such a levy, approved by the voters prior to the issuance of the bonds, which cannot be reduced for as long as any of the debt is unpaid.
With respect to part (a) of the second question, it is my opinion that the annual school election is the appropriate forum for determining the rate of tax to be imposed for the following year. Ark. Const. art. 14, §3; A.C.A. § 26-80-102. Notwithstanding the language of A.C.A. § 26-80-102
to the contrary, a school district's tax rate may not be the subject of a special election. Sims v. Hazen School Dist. No. 2, 215 Ark. 536,221 S.W.2d 401 (1949); Adams, 214 Ark. 771.
With respect to the first part of part (b) of the second question, it is my opinion that there is no process whereby a school district's taxpayers may place the district's tax rate before the voters. The constitution leaves it to the district's board of directors annually to propose a rate of tax sufficient, in its opinion, to provide for the district's needs. The rate proposed for a given year may, of course, be lower than the existing rate, but the board's authority in this area is exclusive. See
Op. Att'y Gen. 94-042 (copy enclosed).
The foregoing makes unnecessary answers to the second part of part (b) of the second question and to part (c) of the second question, although I would note that the annual school election might itself fairly be characterized as a referendum on the school board's policies.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General J. Madison Barker.
Sincerely,
WINSTON BRYANT Attorney General
WB:JMB/cyh
[1] Act 233 of 1995 amended A.C.A. § 6-20-1210(b) in a manner not relevant to your inquiries.
[2] Arkansas Code Annotated § 26-80-106 provides:
 Because of consolidation of school districts and for other reasons, the continuing millage voted by a school district for the payment of its outstanding indebtedness frequently provided a substantial surplus over the amount of the annual principal and interest requirements. This surplus may be used by the district for the purpose of paying the principal and interest of subsequent indebtedness incurred by it and may be pledged for that purpose or any other school purpose.